JOHN W. EDMINSON v. THE CITY OF ABILENE.

No. 299.

REFUNDING BONDS—*Resolution of City Council — Innocent Purchaser.* The authority conferred by statute upon cities of the second class to issue funding bonds must be exercised by the enactment of an ordinance under the forms required by the statute incorporating such cities, and cannot be exercised by resolution. Hence, a resolution passed by the council of the defendant city did not authorize the mayor and clerk to issue the bonds sued upon herein, and the same are invalid in the hands of an innocent purchaser, such bonds having been issued to fund no lawful debt existing against the city and being without consideration.

Error from Dickinson district court; O. L. MOORE, judge. Opinion filed July 11, 1898. Affirmed.

*Winfield Freeman,* and *Wood & Oakley,* for plaintiff in error.

*Scammon, Mead & Stubenrauch,* for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J.: Plaintiff in error sued the city of Abilene to recover on several coupons detached from bonds purporting to have been issued by the authority of the city. The bonds from which these coupons are detached recite that they are issued in conformity to and in full compliance with the provisions of chap-

20—7 KAN. APP.

ter 50, Laws of 1879, approved March 8, 1879, entitled
"An act to enable counties, municipal corporations and
boards of education of any city and school district to
refund their indebtedness," and that they were issued
to refund outstanding legal indebtedness of said city
of Abilene duly surrendered and canceled. It is fur-
ther certified and recited in the bonds that all acts,
conditions and things required to be done precedent
to and in the issuing of said bonds have been properly
done, happened and performed in due form as required
by law, and that the total indebtedness of the city,
inclusive, is within the statutory limit.

The city answers (1) by denial of each and every
allegation of the petition; (2) by denying that the
plaintiff is an innocent purchaser for value of the
coupons, alleging that the coupons were not pur-
chased by the plaintiff for value, but were passed to
him after maturity for the purpose of enabling him
to maintain the action; further alleging that he took
them with full knowledge of the matters and things
thereafter set out in the answer; that the bonds were
illegal, void, and of no effect, and do not and never
did form any just or legal demand against the city;
that they were not issued for the purpose of funding
a valid and subsisting obligation against the city, but
for the purpose of obtaining from the city $5000 un-
lawfully, and for a purpose not within the province
of the city to pay; and that the mayor and clerk
signed the bonds without authority of the city, in
that no ordinance was passed by the city authorizing
the execution and delivery of the bonds, as required
by the statute in such cases. There are other matters
alleged in the answer by way of defense which we do
not consider necessary to allude to.

To this answer the plaintiff filed a general denial.

Upon the issues thus made there was a trial to the court without a jury, and a judgment for the defendant.

It is not contended that the city received any consideration for these bonds; the city was not indebted lawfully upon the pretended obligations which they were issued to refund. It is conceded by the defendant that the plaintiff occupies the position of a *bona fide* holder, and that the bonds and coupons are negotiable instruments. That they are negotiable and are properly so made, was decided by the supreme court in the case of *Rathbone v. Hopper,* 57 Kan. 240.

The rule of this court regarding the assignment of errors in the brief is not complied with, but we take it that the error complained of is, that the trial court held that the city council could authorize the issuing of these bonds only by ordinance; that a resolution was not a compliance with the statute, and conferred no authority upon the mayor and clerk to execute and deliver the bonds; that, hence, the bonds were issued without authority of law; that this defense was available to the defendant against a holder for value without other notice thereof than that imparted by the records of the municipality itself; and that, in other words, a purchaser in the market was bound to take notice of the fact that these bonds were issued without authority of the municipality, exercised as required by the statute.

The petition alleges error in the trial court, (1) in the admission of evidence; (2) in holding that the refunding bonds could be legally issued only by ordinance, and not by resolution; (3) in holding that chapter 54 of the Laws of 1876 prescribes and controls the method of authorizing the issue of these refunding bonds in question; (4) in holding the bonds to be

non-negotiable; (5) in holding that the coupons were not a valid obligation against the city, in the hands of the plaintiff; (6) in holding that the recitals in the bonds themselves were not obligatory and binding upon the defendant, or, in other words, did not estop the city from saying that its mayor and clerk had acted without authority; (7) in rendering judgment for the defendant; (8) in overruling the plaintiff's motion for a new trial.

The grounds of the motion for a new trial are : (1) Irregularity in the proceedings of the court; (2) abuse of discretion; (3) misconduct of the defendant and its attorneys; (4) accident and surprise; (5) error in the amount of the recovery, the amount being too large; (6) that the findings and judgment of the court are not sustained by sufficient evidence; (7) that the findings and judgment of the court are contrary to law; (8) newly discovered evidence; and, (9) errors of law occurring at the trial.

The points presented by the brief for the plaintiff in error, which are probably intended as assignments of error, but are not wholly supported by the record, are as follows :

1. Where a previous holder of municipal securities was a holder in good faith, for value, without notice, and before maturity, a subsequent holder succeeds to all his rights as a *bona fide* holder for value, no matter when or how the subsequent holder acquired the securities. We do not understand that there is any contention over this question in the case. It is unnecessary to notice it.

2. That the records of the proceedings of a municipal corporation import absolute verity, and in a collateral proceeding, after the rights of third parties have arisen, they cannot be impeached. We do not

understand that this question is involved in this case or entered in any manner into the judgment of the court below.

3. That coupons of bonds of municipalities draw interest from the dates of their respective maturities. We do not understand that there is any question made on this point.

4. The issuance of negotiable refunding bonds by a municipality authorized by statute precludes inquiry as to the validity of the antecedent debt. This proposition was argued by counsel on both sides, and many authorities in support of the proposition are cited by counsel for plaintiff in error. We understand this point to have been determined by our supreme court in the case of *Rathbone v. Hopper*, supra. As we view that case, it was the judgment of the supreme court that this defense was not available against a *bona fide* holder of negotiable securities; and that bonds issued payable to bearer were negotiable, and properly made so under the statute under which these bonds were issued. However, we do not understand that the decision of the court below was based at all upon this proposition.

5. When authority to act is conferred by statute upon the legislative body of a municipality, and no limitation is imposed, whether the authority so granted shall be exercised by ordinance or by a resolution, such legislative body may exercise the authority so conferred either by resolution or ordinance as it sees fit, and the discretion, when so exercised and acted upon, will not be reviewed. We do not understand this proposition to be seriously controverted.

As hereinbefore suggested, the controversy between counsel really is, whether the statutes of Kansas require a city of the second class to exercise this power

conferred upon it by the legislature by ordinance. The act of the legislature, being chapter 50 of the Laws of 1879, conferring the power upon cities to issue refunding bonds, does not, in itself, specifically require the power to be exercised by ordinance; but the general statutes of the state under which the cities are incorporated, the very charters of the cities themselves, do require this power to be exercised by ordinance. This was determined by the supreme court in the case of *Newman v. City of Emporia*, 32 Kan. 456. The court in that case had occasion to construe section 32 of chapter 19 of the General Statutes of 1889 (Gen. Stat. 1897, ch. 32, §§ 120, 121). This section, in conferring certain powers, says that cities of this class are authorized and empowered to enact ordinances for certain purposes. However, the issuing of bonds is not one of the powers conferred by this section. The court holds that, in conferring the power, the legislature says that the cities shall have power to enact ordinances for these purposes, and that they are restricted in the exercise of this power to the enactment of an ordinance. The council had attempted in that case, as in this, to exercise the power by resolution. VALENTINE, J., in *Newman v. City of Emporia*, supra, says :

"We all hold that the work should have been done and the taxes levied under and in pursuance of ordinances, and not under or in pursuance of resolutions; and a majority of the court hold that as the work was not done and the taxes not levied under and in pursuance of ordinances, but only under and in pursuance of resolutions, the entire proceedings are utterly null and void."

It is clear that the power granted by the legislature to cities of the second class to issue bonds, to borrow money or to levy taxes for any purpose is restricted

in the same way—that is, to the enactment of an ordinance. Section 30 of chapter 19 of the General Statutes of 1868, in defining the powers of the city council in cities of the second class, says :

"The cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by this act."

Then follow fifty-two subdivisions specifically defining the powers conferred upon the city council. The fortieth subdivision is :

"To provide for issuing bonds for the purpose of funding any and all indebtedness, now existing or hereafter created, of the city, now due or to become due," etc.

Then follow provisions regarding the time which bonds are to run, the rate of interest, etc., and provisions similar to those contained in chapter 50 of the Laws of 1879, under which these bonds purport to have been issued, limiting the council in their power of issuing funding bonds, so that they should not be issued in excess of the actual and valid indebtedness to be funded. The subsequent amendments to this original act providing for the incorporation of cities of the second class have not preserved the order and system adopted by the legislature of 1868. The powers conferred upon the city to be exercised by its council are distributed through many sections. Following all these sections conferring powers upon the council, section 68 says :

"For any purpose or purposes mentioned in the preceding sections the council shall have power to enact and make all necessary ordinances, rules, and regulations, and they shall also have power to make all such ordinances, by-laws, rules, and regulations,

not inconsistent with the laws of the state, as may be expedient for maintaining the peace,'' etc.

Section 42, chapter 100, Laws of 1872, which was in force at the time these bonds were issued, and is numbered section 43 in the General Statutes of 1889, provides that any ordinance providing for the borrowing of money, levying taxes or appropriating money shall be of no validity unless a majority of the councilmen elected shall vote for such ordinance, and such vote shall be taken by the yeas and nays, and the same shall be entered upon the record of the proceedings of the council. Section 8 of this same act, which is also numbered 8 in the revision of 1889, provides that any ordinance having any object beyond the bare appropriation of money shall not be in force until published as hereinafter provided. This section provides for the manner of publishing ordinances. So that it clearly appears from a history of the legislation upon this subject, and from the statutes themselves in existence at the time this attempt was made to fasten an obligation upon the taxpayers of Abilene, that the legislature intended that these powers should be exercised through the medium of ordinances enacted with all the formality and solemnity required by the statutes ; and that before they should have effect they should be published, so that the taxpayers might know specifically beforehand what their servants and agents, the city council, intended to do regarding any indebtedness or burdens to be put upon them. The provision is a salutary one, and, as remarked by the trial court, ought to be strictly adhered to by the courts.

Hence, we say that it required an ordinance duly passed according to the forms and requirements of the statute, in order to confer any authority or power upon the mayor and clerk of the city to put in circu-

lation these bonds; that the attempt to confer the authority upon the mayor and clerk by resolution, as said in the case of *Newman v. City of Emporia,* supra, is absolutely void. A purchaser of these securities was bound to take notice of this defect. No recital that could be contained in the bond could cure such a fatal defect of power, or estop the city from asserting an absolute want of power upon the part of the mayor and clerk to issue the bonds and put them in circulation. They created no obligation against the city, either by its own intendment or by estoppel. It is practically conceded by counsel for plaintiff in error that this result would follow if the statute required the power to be exercised by ordinance and not by resolution.

The judgment of the district court is affirmed.

McELROY, J., concurring.

WELLS, J., (dissenting) : I do not think that chapter 50, Laws of 1879, under the authority of which the bonds in question were issued, required or anticipated that an ordinance should be passed in order to authorize the issue of bonds as therein provided for. Said chapter provides first for a compromise, and when this is effected it makes it the duty of the officers named therein to issue the bonds.

A compromise cannot be made by ordinance. Its results may be thus evidenced, but it is not necessary. The compromise itself must be consummated before any ordinance to give it effect could be.passed. After a compromise is made no discretion rests with the officers named under this law, but it is their duty to issue the bonds. It seems to me that the authority to issue bonds under this chapter is independent of any other authority and is not controlled or limited by any other law in relation to the issue of bonds.