William J. Schieffelin, Respondent, *v.* John F. Hylan et al., Constituting the Board of Estimate and Apportionment of the City of New York, Appellants.

Constitutional law — municipal corporations — public celebrations — municipality may not turn over to unofficial committee public moneys for expenditure — provision of city charter requiring public notice of resolutions leading to expenditure of public moneys must be strictly complied with — New York city — legislature has conferred power upon city to expend funds for public celebrations — such legislation constitutional and valid.

1. A municipality may not turn over to an unofficial committee public moneys to be expended in carrying on an anniversary celebration.

2. A provision of a city charter designed to give to taxpayers notice of a proposed resolution leading to the expenditure of public moneys ought to be construed strictly in favor of the taxpayer.

3. The failure to publish in advance for the required time an abstract of a resolution to be presented to the board of aldermen of the city of New York requesting the issue of bonds for the purpose of defraying the expense of a proposed public celebration was a fatal omission which was not counteracted or avoided because in some other form there was a publication from which a taxpayer might have gleaned the same information as would be furnished in the regular method prescribed by the charter.

4. By section 39 of its charter (L. 1901, ch. 466) and sections 19, 20 (Subds. 13, 16) and 21 of the General City Law (Cons. Laws, ch. 21) the legislature has conferred upon the city of New York power to expend its funds upon a public celebration.

5. In determining whether such an act comes within the constitutional definition of a city purpose courts may and will take notice of widespread opinion and general practice which have come to regard as a city purpose something which might not be such by absolute necessity or on a narrow interpretation of the Constitution.

6. The erection of monuments in commemoration of events of public importance or in honor of individuals or classes of individuals who have greatly benefited the nation, state or municipality, the suitable entertainment of distinguished visitors, the appropriate welcome of soldiers returning from war and the celebration of important anniversaries, when well and properly conducted, serve such purposes

that a widely prevailing judgment has come to recognize them as acts which may be carried out by a municipality with the expenditure of public moneys.

7. Observing the principle that when the legislative judgment has declared a given act to be impressed with a purpose and character which bring it within a constitutional provision, courts are loath to interpose their judgment and to nullify the legislative act by declaring it unconstitutional, and guided and aided by widesperad opinion and general practice fortified by decisions of other courts entitled to great respect, the conclusion is reached that a construction of our Constitution (Art. 8, § 10) permits the legislation which has been adopted authorizing such a celebration as the one proposed. (*Green* v. *Frazier*, 253 U. S. 233, 240; *Kingman* v. *City of Brockton*, 153 Mass. 255; *Stegmaier* v. *Goeringer*, 218 Penn. St. 499, followed; *Hodges* v. *City of Buffalo*, 2 Den. 110; *Tash* v. *Adams, etc.*, 64 Mass. 254, distinguished.)

*Schieffelin* v. *Hylan*, 206 App. Div. 659, 668, affirmed.

(Argued May 31, 1923; decided July. 13, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 13, 1923, which unanimously affirmed an order of Special Term granting a motion for an injunction *pendente lite*.

The following questions were certified:

" 1. Do section 39, Greater New York charter, and section 188, subdivision 8, Greater New York charter, authorize expenditures of city money for celebrations, receptions and entertainments?

" 2. If said sections do so authorize, do they violate article 8, section 10, of the Constitution of the state of New York?

" 3. Was this action prematurely brought?

" 4. Was the publication of the minutes of the board of aldermen in the *City Record* of March 15, 1923, set forth in Exhibits 'A' and ' B,' annexed to the complaint, a substantial and sufficient compliance with section 30, Greater New York charter?

" 5. Would the appropriation and expenditure of municipal funds for the purpose of a public celebration of the

Twenty-fifth Anniversary of the Greater City of New York, as shown by Exhibits 'A' and 'B,' annexed to the complaint, constitute illegal official acts or waste or injury, within the meaning of section 51 of the General Municipal Law? "

*George P. Nicholson*, Corporation Counsel (*John F. O'Brien, John Lehman* and *Russell Lord Tarbox* of counsel), for appellants. Sections 39 and 188, subdivision 8, of the charter authorize expenditures of city money for celebrations, receptions and entertainments. (*Manning* v. *Keenan*, 73 N. Y. 45; *Adamson* v. *Schreiner*, 176 App. Div. 95.) Section 39 and section 188, subdivision 8, of the Greater New York charter authorize expenditures of city money for a " city purpose " and, therefore, do not violate article 8, section 10, of the Constitution. (*People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Sun P. & P. Assn.* v. *Mayor, etc.*, 152 N. Y. 257; *Parsons* v. *Van Wyck*, 56 App. Div. 329; *Matter of Chapman*, 168 N. Y. 80; *People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367; *Cleveland* v. *City of Watertown*, 222 N. Y. 159; *Hodges* v. *City of Buffalo*, 2 Den. 110; *Halstead* v. *Mayor, etc.*, 3 N. Y. 430, 433; *Gamble* v. *Village of Watkins*, 7 Hun, 448; *B. C. R. R. Co.* v. *Whalen*, 191 App. Div. 737; 229 N. Y. 570; *Gaynor* v. *Village of Portchester*, 230 N. Y. 210.) There has been substantial compliance with section 30, Greater New York charter. (*Moore* v. *Mayor, etc.*, 73 N. Y. 238; *Peterson* v. *Mayor*, 17 N. Y. 449, 453; *People* v. *Flagg*, 17 N. Y. 584; *Gaynor* v. *Village of Portchester*, 230 N. Y. 210; *Matter of Burmeister*, 76 N. Y. 174; *Matter of Douglas*, 46 N. Y. 42; *Moore* v. *Mayor, etc.*, 73 N. Y. 238.) The appropriation and expenditure of municipal funds for the purposes of this celebration would not constitute illegal official acts or waste or injury. (L. 1898, ch. 118; *Speir* v. *City of Brooklyn*, 139 N. Y. 6; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Rogers* v. *O'Brien*, 153 N. Y. 357,

361; *Knowles* v. *City of New York,* 176 N. Y. 430; *Altschul* v. *Ludwig,* 216 N. Y. 459, 467; *Schieffelin* v. *Craig,* 183 App. Div. 515.)

*Leonard M. Wallstein* and *Ralph M. Frink* for respondent. The Constitution of the state prohibits the expenditure of city money for this jubilee. (Const. N. Y. art. 8, § 10; *Sun Publishing Assn.* v. *Mayor,* 152 N. Y. 257; *Hodges* v. *City of Buffalo,* 2 Den. 110; *Halstead* v. *Mayor,* 3 N. Y. 433; *Gamble* v. *Village of Watkins,* 7 Hun, 448; *Parsons* v. *Van Wyck,* 56 App. Div. 329; *Law* v. *People,* 87 Ill. 385; *Tash* v. *Adams,* 64 Mass. [10 Cush.] 252; *Hood* v. *Mayor,* 83 Mass. [1 Allen] 103; *Gerry* v. *Inhabitants of Stoneham,* 83 Mass. [1 Allen] 319; *Black* v. *Detroit,* 119 Mich. 571; *Austin* v. *Coggeshall,* 12 R. I. 329; *City* v. *Brainard,* 22 Conn. 552; Dillon on Mun. Corp. [5th ed.] § 309; McQuillan on Mun. Corp. § 364; Tiedeman on Mun. Corp. § 139.) The proposed appropriation and expenditure is further unconstitutional as a gift of public money, for those who are to receive it for expenditure are not public officials and there is no authority to make or treat them as such. (Const. N. Y. art. 8, § 10; *O'Connor* v. *Walsh,* 83 App. Div. 179; *People* v. *Brannan,* 141 App. Div. 295; *Jacobs* v *Elmira,* 147 App. Div. 433; *Sullivan* v. *McAneny,* 145 App. Div. 413; *Mt. Sinai Hospital* v. *Hyman,* 92 App. Div. 270.) No alleged usage in the unlawful expenditure of public money for celebrations can justify or excuse the present proposed violations of the constitutional inhibition. (*Hood* v. *Mayor, etc.,* 183 Mass. 103.) Even if the proposed authorization of special revenue bonds were within the authority of the defendants, the board of aldermen's adoption of the resolution was illegal, because no abstract thereof had been published five days before its adoption on March 20, 1923. (L. 1901, ch. 466, §§ 29, 30; *Matter of Douglas,* 46 N. Y. 42; *Matter of Burmeister,* 76 N. Y. 174.)

17

[236 N. Y. 254]        Opinion, per HISCOCK, Ch. J.        [July,

HISCOCK, Ch. J.   The plaintiff as a taxpayer brought this action to restrain the issue of $400,000 of special revenue bonds the proceeds whereof were to be used in conducting a celebration of the Twenty-fifth Anniversary of the creation of the Greater City of New York.

It appears as leading to the litigation that the defendant, John F. Hylan, and others constituting the present administration of the Greater City of New York conceived the plan of having an elaborate and expensive celebration of the Twenty-fifth Anniversary of the establishment of that municipality.   For the purpose of formulating and carrying out the plans for such a celebration and of spending the moneys which might be appropriated to pay its expenses a committee of citizens was appointed which has been known as the " Mayor's Committee."   This committee drafted tentative plans for such celebration, made an estimated budget of the expenses thereof aggregating about $400,000 in addition to $100,000 which had been included in a prior budget and submitted the same to the Board of Estimate and Apportionment for action.   That Board approved the plans and, in accordance with the Charter, requested the Board of Aldermen to adopt a resolution asking the Board to issue special revenue bonds for the purpose of defraying the anticipated expenses.   This the Board of Aldermen did without certain published notices required by the Charter, but before the Board of Estimate and Apportionment could act this injunctive order appealed from was obtained.

The plans which were submitted by the Mayor's Committee set out in very considerable detail the features of the proposed celebration.   We do not deem it necessary or desirable to recite at any length these details.   Some of them are severely criticised as being frivolous, extravagant and inappropriate.   But whatever we may think of these criticisms of various features, when we consider the scope of the entire program we think that it must be said that many of its features are to a certain extent educational

and instructive and that, in its entirety, it was one which the municipal government in the exercise of its discretion, if it otherwise had the power so to do, could adopt as a form and manner of commemoration and celebration. As we shall have occasion to remark hereafter if it be granted that such a government has the fundamental power to institute and carry on such a celebration there must be conceded a wide discretion in respect of methods and details and the underlying question on this appeal, therefore, is the one whether a municipality has the power to expend a large sum of money in celebrating such an anniversary. Before reaching this question we are, however, required to consider two others of minor importance.

Apparently, if the plan for this celebration and for the issue of bonds had prevailed the proceeds of such bonds were to be turned over to the Mayor's Committee for expenditure in carrying out the program proposed by it, with such amendments as it might see fit to make. And again, the resolution adopted by the Board of Aldermen requesting the issue by the Board of Estimate and Apportionment of the bonds was not adopted by an unanimous vote and no specific notice of five days of the provisions of the resolution which was adopted was given as required by the Charter. There was published, however, more than five days before the adoption of the resolution by the Board of Aldermen in the appropriate paper a copy of the minutes of the Board which contained a statement of the proceedings before the Board of Estimate and Apportionment.

We think that these facts furnish two reasons for sustaining the present injunction. We know of no law which would permit a municipality to turn over to an unofficial committee public moneys to be expended in carrying on such a celebration as this. In fact we should think it would be very dangerous if it could be done. We shall assume that in carrying out such elaborate plans for a

celebration as are here outlined it would be necessary to have the assistance of various committees of citizens and very possibly to use the audit and certificate of such committees as a partial basis for payment by the municipality of expenses. But that is far different than the present proposition, as we understand it, of turning the entire fund over to such a committee to be by it expended without official responsibility or accountability. We also think that the failure to publish in advance for the required time an abstract of the resolution to be presented to the Board of Aldermen requesting the issue of these bonds was a fatal omission which was not counteracted or avoided because in some other form there was a publication from which a taxpayer might have gleaned the same information as would be furnished in the regular method prescribed by the Charter. Such a provision designed to give to taxpayers notice of a proposed resolution leading to the expenditure of public moneys ought to be construed strictly in favor of the taxpayer. Too often, in all probability, such notice even when given in accordance with law becomes a formality and does not receive the attention and scrutiny which it should. But if this be so the evil certainly will not be lessened by softening the requirements and recognizing substitutes for such notice as is specifically required.

While the conclusions thus reached lead to an affirmance of the order appealed from, the questions which have been certified to us and the public interests which are involved make us feel that we should go further and consider the substantial question presented whether a municipality may spend its funds for such a purpose as was the proposed celebration.

A municipality is created by the state and, of course, there can be no debate of the proposition, established by innumerable decisions, that subject to constitutional limitations the legislature may confer upon it such powers as it sees fit and that the municipality will have the right

not only to exercise such express powers but also all other powers which are reasonably incidental thereto. The questions which we encounter on this branch of the appeal, therefore, are the ones whether, *first*, the legislature has empowered the city of New York to expend money upon such a purpose as the one before us and, *second*, whether if it has done so such grant of power conflicts with any constitutional provision.

It seems to us that undoubtedly the legislature, if constitutionally permitted so to do, has conferred this power upon the municipality. The section which has been relied on as accomplishing this is section 39 of the charter (L. 1901, ch. 466) which provides " * * * No money shall be expended for any celebration, procession, funeral ceremony, reception or entertainment of any kind or on any occasion, unless by the votes of four-fifths of all the members of the Board of Aldermen." Of course this is a bungling and backhanded method of authorizing any of the things enumerated. Still we think it is the fair interpretation of the section that when it provided that a given thing might not be done unless authorized in a certain way it was the legislative intent that if it was thus authorized it might be done. This principle of interpretation has been applied to another statute very similar in its construction to the present one. (*Manning, Bowman & Co.* v. *Keenan,* 73 N. Y. 45, 55, 56.) Furthermore, we think that there are other statutory provisions apparently overlooked thus far which authorize this municipal action even if the statute just quoted did not do so. (General City Law [Cons. Laws. ch. 21], secs. 19, 20, subds. 13, 16, and sec. 21.) Of these, section 20, subdivision 16, authorizes a city " To establish and maintain such institutions and instrumentalities for the instruction, enlightenment, improvement, entertainment, recreation and welfare of its inhabitants as it may deem appropriate or necessary for the public interest or advantage."

Easily reaching this conclusion of authority under

statutory enactments, we come to the final and more anxious inquiry whether the latter were prohibited by that provision of section 10 of article 8 of our Constitution which provides " nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." Is the celebration of an anniversary of the creation of the Greater City of New York such a city purpose that its officials may expend a large sum of money therefor when authorized by the legislature?

It probably would be impossible and certainly we shall not try to formulate any definition of a city purpose which would be of universal application. Necessarily, in determining whether a proposed municipal plan or act is impressed with the character of a city purpose we must be largely controlled by the inherent nature of the thing to be done. But while this is true it is also true that in determining whether an act of a given nature comes within the constitutional definition of a city purpose courts may and will take notice of widespread opinion and general practice which have come to regard as a city purpose something which might not be such by absolute necessity or on a narrow interpretation of the Constitution. When we survey the field of municipal activities we see that some things are so inherently necessary for the welfare of the inhabitants of a municipality that nobody would think of questioning their inclusion in city purposes. Such for instance are the construction of school-houses and the maintenance of streets and sewers. Other things while perhaps a little less necessary have come to be viewed as so contributing to the comfort and happiness of citizens that no one is now disposed to question that they accomplish a city purpose. Such are parks, recreational grounds and public baths. Then there is another class of purposes of a public nature still farther removed from the justification of absolute necessity which would include the erection of monuments in

commemoration of events of public importance or in honor of individuals or classes of individuals who have greatly benefited the nation, state or municipality by their accomplishments or sacrifices, the suitable entertainment of distinguished visitors representing some foreign nation or coming upon some public mission, the appropriate welcome of soldiers returning from war and, as pertinent in the present case, the celebration of an anniversary important in national, state or local history. No one of these things is justified by the compulsion of necessity and yet they are of such a character and, when well and properly conducted, serve such purposes that we think a widely prevailing judgment has come to recognize them as acts which may be carried out by a municipality with the expenditure of public moneys.    In our opinion they are all subject to the same constitutional consideration and if one of them is prohibited we think all would be.    If a substantial sum cannot be spent for one purpose a few dollars cannot be expended for another. The same principle applies to all and we believe that common judgment and general practice would be opposed to the view that a municipality might not erect a monument to soldiers of a former war, might not spend some money in appropriately caring for and entertaining such visitors as were the Balfour Commission, Marshals Joffre, Foch and Admiral Beatty during and after the war, in giving fitting expression to the emotions which attended the return of our divisions from the late war or in celebrating the anniversary of some concededly important event.

As a support of the views which we are expressing we have referred to a justification of such a celebration as the present proposed one by public opinion and long-continued practice.    We can take judicial notice of the fact that throughout the state monuments have been erected in honor of soldiers of former wars; that constantly by decorations and other means municipalities are cele-

brating anniversaries such as that of the Declaration of Independence and that within a short time past appropriate welcome was being given by municipalities to our returning soldiers. Scattered through our statutes are found many which have authorized the appropriation either of municipal or state moneys for some celebration which was not different in character and general purpose than the present one and, while the constitutional provisions restricting the expenditure of state moneys are not precisely the same as the one which has been quoted referring to the expenditure of municipal moneys, there is no doubt that in the consideration of such a question as the one now before us the restrictions upon the state would be largely the same as those upon a municipality.

It is well settled that courts may take notice of such guides in passing upon the constitutionality of acts under consideration; that even the interpretation of a constitutional provision may be aided by such considerations. (*People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367, 376; *People* v. *Schweinler Press,* 214 N. Y. 395; *Muller* v. *Oregon,* 208 U. S. 412, 420.)

As argued by respondent of course no one would intelligently claim that a mere practice, however widespread, would serve to overturn a constitutional provision. It is only a guide and aid to interpretation and would be futile unless fortified by the decisions of the courts and, therefore, finally, we look to these as determinative of the question before us. When we do this we find that the great preponderance of judicial expression sustains the constitutionality of the statutes permitting the city of New York to indulge in the celebration of such an anniversary as the present proposed one.

At the threshhold of such an investigation we encounter and, of course, subscribe obedience to the well-settled principle that when the legislative judgment has declared a given act to be impressed with a purpose and character

which bring it within a constitutional provision, courts are loath to interpose their judgment and to nullify the legislative act by declaring it unconstitutional. (*Loan Assn.* v. *Topeka*, 20 Wall. 655, 665; *Green* v. *Frazier*, 253 U. S. 233; *Weismer* v. *Vill. of Douglas*, 64 N. Y. 91, 99.)

Observing this principle we find, as we have said, a preponderance of authority justifying the legislature in authorizing under our Constitution such a celebration as the proposed one. In some of the states where were rendered the decisions which are cited there were constitutional provisions not far different than our own restricting the legislative authorization of the expenditure of public moneys and in all of the cases cited it seems to have been assumed that the expenditure of public moneys for the purpose there under consideration would be invalid even though authorized by the legislature unless characterized by those features of public purpose, welfare or education which it is assumed would sustain the constitutionality of the acts of our Legislature now under review. (*Hubbard* v. *City of Taunton*, 140 Mass. 467; *Kingman* v. *City of Brockton*, 153 Mass. 255; *Stegmaier* v. *Goeringer*, 218 Penn. St. 499; *Daggett* v. *Colgan*, 92 Cal. 53, 59; *State ex rel. Douglas Co.* v. *Cornell*, 53 Neb. 556; *Norman* v. *Kentucky Bd. of Managers*, 93 Ky. 537; *Lilly* v. *City of Indianapolis*, 149 Ind. 648.)

In *Green* v. *Frazier* (*supra*) the court considering legislation authorizing a state through an industrial commission to manage and conduct certain industries discussed the question of what constitutes " public purposes " and said: " Necessity alone is not the test by which the limits of state authority in this direction are to be defined, but a wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of society, and advance the present and

prospective happiness and prosperity of the people." (p. 240.)

In *Kingman* v. *City of Brockton* (*supra*) the court said: " A statute authorizing the raising of money by taxation for the erection of such a memorial hall may be vindicated upon the same grounds as statutes authorizing the raising of money for monuments, statues, gates or archways, celebration * * * decorations upon public buildings, or other public ornaments or embellishments, designed merely to promote the general welfare, either by providing for fresh air or recreation, or by educating the public taste, or by inspiring sentiments of patriotism or of respect for the memory of worthy individuals. The reasonable use of public moneys for such purposes has been sanctioned by several different statutes and the constitutional right of the legislature to pass such statutes rests on sound principles."

In *Stegmaier* v. *Goeringer* (*supra*) it was said: " The custom of commemorating important historical, military and civil events is as old as mankind, and at common law the right of municipalities to make appropriations out of public funds for the proper observance of such occasions was recognized for centuries. There is no reason why a municipality unless restricted by statute should not be permitted to make reasonable appropriations in order to fitly commemorate public events in which all of the citizens are, or should be, interested."

Counsel for respondent with much industry has collected and cited many authorities including some from this state which he urges deny the authority of the legislature constitutionally to authorize an expenditure of municipal moneys for such a purpose as the present one. We do not think that it would be profitable at length to review and distinguish these authorities. In our opinion it may be said comprehensively that when denying the right of a municipality to spend moneys for some such purpose as the present one, whatever the language used

may have been, the real proposition decided was that such an expenditure was not inherently a city purpose and, therefore, the act could not be performed and the moneys expended unless authorized by statute. We do not think that the court in any of them was called upon to decide a question at all akin to the present one whether a legislature might constitutionally authorize such an expenditure. For instance in the case of *Hodges* v. *City of Buffalo* (2 Den. 110) the court was required to decide whether a municipality might entertain visitors when there was no statute authorizing such expenditure and it was simply held that such expenditure was not authorized by any of the powers expressly conferred upon the common council or by any implied powers incidental to the discharge of the former.

Likewise in *Tash* v. *Adams, etc.* (64 Mass. 254), also greatly relied on, where it was held that a town had no right to appropriate money for a celebration of the anniversary of the surrender of Cornwallis because there was no statutory authorization so to do, the court significantly said: " It [appropriation for said purposes] was clearly a violation of law and without any sanction from the usages of towns in this commonwealth." Moreover, the authority of this decision if conflicting must yield to the later decision of *Kingman* v. *City of Brockton,* heretofore cited.

Thus we reach the conclusion that a construction of our Constitution aided by common practice and fortified by decisions of other courts entitled to great respect permits the legislation which has been adopted authorizing such a celebration as the one proposed.

We have not overlooked the argument that the power of municipal officers to appropriate the money secured from taxpayers to such purposes as we have discussed may lead to the extravagant and wasteful expenditure of public funds in celebration of occasions which are unworthy of any such attention. Of course, that is true

and within their powers courts ought to be vigilant especially in these days of burdensome taxation to restrain the questionable and extravagant expenditure of public moneys. But we must recognize that power inevitably carries with it the opportunity for misuse and, finding authority upon the part of a municipality to spend *some* sum of money upon occasions of the class which we have described, the courts cannot closely catalogue these occasions or fix the limits of their expenditures. Those are considerations which within wide limits must be left to the judgment and discretion of those whom the voters select to represent them.

These views lead to the conclusion that the order appealed from should be affirmed, with costs, and, of the questions certified to us, numbers 3, 4 and 5 should be answered in the negative and questions 1 and 2 not answered because they do not properly set forth controlling facts on this appeal.

HOGAN, CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order affirmed.