720 Riverside Owners Corp. v Bowen (2024 NY Slip Op 24052)

[*1]

720 Riverside Owners Corp. v Bowen

2024 NY Slip Op 24052

Decided on February 22, 2024

Appellate Term, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Miscellaneous Reports.

Decided on February 22, 2024
SUPREME COURT, APPELLATE TERM, FIRST DEPARTMENT

PRESENT: Hagler, P.J., Brigantti, Perez, JJ.

571169/23

720 Riverside Owners Corp., Petitioner-Landlord-Appellant, 
against
Eugene Bowen and Sean Farrow, Respondents-Tenants-Respondents.

Landlord, as limited by its brief, appeals from so much of a final judgment of the Civil Court of the City of New York, New York County (Anne Katz, J.), entered on or about June 17, 2022, after a nonjury trial, as limited its recovery of rent arrears to the principal sum of $47,483.99 in a nonpayment summary proceeding.

Per Curiam.
Final judgment (Anne Katz, J.), entered on or about June 17, 2022, insofar as appealed, modified to vacate the court's calculation of rent arrears, including so much thereof as barred landlord from collecting rent in excess of the rent set forth in the prior tenant's lease, and to remand for a recalculation of arrears based upon the rent set forth in the tenants' lease, and entry of an amended judgment; as modified, final judgment affirmed, with $25 costs.
In this summary nonpayment proceeding against rent stabilized tenants, Civil Court made the following findings of fact, after trial, which we adopt: (1) the prior tenant of the premises paid a monthly rent of $1,220.67; (2) after the prior tenant vacated, landlord had "performed a gut renovation at the premises" and "was entitled to the legal vacancy and longevity increases along with the appropriate increases" for individual apartment improvements (IAIs); (3) respondents-tenants thereafter entered possession in March 2017, pursuant to a rent stabilized lease setting forth a monthly rent of $3,100.00 per month, (4) landlord failed to furnish tenants with the lease rider required by Rent Stabilization Code (RSC)(9 NYCRR) § 2522.5(c)(1), at the inception of their tenancy.
As a result of landlord's failure to furnish the rider, Civil Court held that landlord was barred from collecting any rent in excess of the $1,220.67 monthly rent set forth in the prior tenant's lease; and that once the rider is served, the penalty would be eliminated, prospectively. The court then awarded landlord 61 months of rent arrears at the rate of $1,220.67 per month, totaling $74,460.87, less an abatement and a credit for payment, matters not at issue on appeal.
On appeal, landlord argues that it should not have been limited to collecting the rent set forth in the prior tenant's lease. It claims that it established that the rider was furnished to [*2]tenants, and, in any event, even if not furnished, it was entitled to collect the lease rent because it demonstrated that it was a legal rent.
The Rent Stabilization Code requires that, for each vacancy or renewal lease, the "owner shall furnish to each tenant signing a vacancy or renewal lease, a rider in a form promulgated or approved by the DHCR ... describing the rights and duties of owners and tenants ... including a detailed description in a format as prescribed by DHCR of how the rent was adjusted from the prior legal rent" (RSC § 2522.5[c][1]).
Initially, we conclude that the trial court's finding that landlord failed to furnish the lease rider is supported by a fair interpretation of the evidence, including the credited testimony of tenants and the court's prior preclusion order. This conclusion does not, however, end our analysis because subdivision (3) of RSC § 2522.5(c) sets forth the consequences of the failure to furnish the rider. This provision states, in relevant part, that where a tenant is not furnished with a copy of the lease rider:
"... the owner shall not be entitled to collect any adjustments in excess of the rent set forth in the prior lease unless the owner can establish that the rent collected was otherwise legal. In addition to issuing an order with respect to applicable overcharges, DHCR shall order the owner to furnish the missing rider, notice, or documentation. The furnishing of the rider, notice, or documentation by the owner to the tenant or hotel occupant shall result in the elimination, prospectively, of such penalty."
Pursuant to this provision, if the owner does not furnish the rider, it is limited to collecting the rent set forth in the prior lease "unless the owner can establish that the rent collected was otherwise legal." Thus, landlord can collect the lease rent if it establishes that it is a legal rent. The regulatory history of RSC § 2522.5(c)(3) is fully consistent with this reading. DHCR issued a notice indicating that:
"9 NYCRR § 2522.5(c)(1) and 9 NYCRR § 2522.5(c)(3) are amended to provide the following: Required lease riders attached to leases will have greater detail as to how the rent was calculated, including details about how any IAI rent increase was calculated; tenants will be able to request documentation from owners to support an IAI increase; if the lease rider and/or any requested IAI documents are not provided, there can be no rent increase until the rider/documentation is provided unless the owner can prove the rent charged is otherwise legal; if the rent charged is above the legal rent during period when rider/documentation is not provided, there can be a rent overcharge proceeding and no rent increase can be collected until the rider/documentation is provided." (2014 NY REG Text 323579 [NS]).
Furthermore, in response to public comments that the amendment would lose its force if the owner is allowed to establish that the rent collected would be legal, DHCR responded that "The possible non imposition of the penalty is patterned on registration" (id.), a response which logically refers to Rent Stabilization Law (RSL) [Administrative Code of City of NY] § 26-517(e), dealing with the failure to file initial or annual rent registration statements. 
RSL § 26-517(e) provides that a landlord's failure to file a "proper and timely" annual rent registration statement results in the rent being frozen at the level of the "legal regulated rent in effect on the date of the last preceding registration statement," and that the filing of a late [*3]registration results in the prospective elimination of the sanctions. As relevant herein, the provision further states that, "provided that increases in the legal regulated rent were lawful except for the failure to file a timely registration, the owner, upon the service and filing of a late registration, shall not be found to have collected an overcharge at any time prior to the filing of the late registration." 
RSC § 2522.5(c)(3), like RSL § 26-517(e) upon which it is patterned, sanctions an owner for noncompliance by reducing the rent to a prior legal level, and RSC § 2522.5(c)(3), like RSL § 26-517(e), enables owners to cure and to collect rent that became due during the period of noncompliance, if it is a legal rent.
Here, the trial evidence showed and the court expressly found that the $3,100.00 per month lease rent was a legal rent. Specifically, the court stated that landlord was "entitled to the legal vacancy and longevity increases, along with the appropriate increases for the IAI's" that were relied upon to increase the legal rent from $1,220.67 to $3,100.00 per month. In particular, the court found that landlord was entitled to an 18% vacancy increase and a $146.48 longevity increase. Furthermore, with respect to the IAI's, the court found that landlord proved that "the renovations took place... and provided proof of the [$102,000] bill and payment for the renovations ... and offered pictures which showed the premises in mint condition" (see former RSC § 2522.4[a][4]). These express factual findings establish that the lease rent charged tenants was a legal rent. 
Tenants' contention that the failure to provide the rider bars any rent increase until the rider is given and the owner can establish that the rent is otherwise legal would render meaningless the words "unless the owner can establish that the rent collected was otherwise legal," contained in RSC § 2522.5(c)(3). "It is an accepted rule that all parts of a statute are intended to be given effect and that a statutory construction [that] renders one part meaningless should be avoided" (Rocovich v Consolidated Edison Co., 78 NY2d 509, 515 [1991]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 98). "The word unless has the force of except; its primary meaning is 'unloosened from,' so what follows in the sentence after the word unless is excepted or unloosened from what went before it" (Manning v Keenan, 73 NY 45, 56 [1878]). Thus, when the Code provided that if the rider was not furnished, the vacancy or renewal lease rent may not be charged "unless the owner can establish that the rent collected was otherwise legal," it was the drafter's intent that the vacancy or renewal lease rent may be collected if it is shown to be legal (see Schieffelin v Hylan, 236 NY 254, 261 [1923]). This plain reading of the Code is further supported by the above-referenced regulatory history, specifically, DHCR's notice stating that "there can be no rent increase until the rider/documentation is provided unless the owner can prove the rent charged is otherwise legal" (2014 NY REG Text 323579 [NS]).
Finally, in reaching our conclusion on this case, we emphasize that the Code unequivocally requires an owner to furnish the rider (see RSC § 2522.5[c][1]), and imposes penalties for failure to do so (see RSC § 2522.5[c[[3]). In fact, DHCR Fact Sheet # 2 (10/2020) specifies that a tenant who is not served with a copy of the rider "may file [a] form RA-90/RA-90 ETPA" complaint and DHCR "may issue an order directing a refund of any payment inappropriately made plus all penalties otherwise due in an overcharge proceeding." However, in the particular circumstances of this case, the failure to serve the rider, though a violation of the law subjecting the landlord to possible penalties, does not preclude landlord from recovering the [*4]legal rent, given that landlord established at trial how the rent was adjusted from the prior legal rent and tenant had an opportunity to contest landlords evidence (see Sandlow v 305 Riverside Corp., 201 AD3d 418, 419 [2022]). Indeed, on appeal, tenant does not seriously challenge the legality of the $3,100 per month rent.
Accordingly, we direct that the matter be remanded for recalculation of the arrears owed to landlord and entry of an appropriate amended judgment.
All concur
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Clerk of the Court
Decision Date: February 22, 2024